IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
UNITED STATES OF AMERICA,      )
                               )
          v.                   )    1:06cr205 (JCC)
                               )
DAVID A. KAYE,                 )
                               )
     Defendant.                )
```

## M E M O R A N D U M   O P I N I O N

The matter before this Court is whether Defendant, David A. Kaye, violated 18 U.S.C. § 2422(b) and 18 U.S.C. § 2423(b) by using the Internet to persuade, induce, or entice an individual whom he believed was a thirteen-year-old boy to engage in a sexual act and by traveling from Maryland to Virginia for a sexual rendezvous with said individual. For the following reasons, this Court finds Defendant guilty on both counts.

### I.  Findings of Fact

The basic facts of this case are largely undisputed as between the Government and Defendant. In evaluating Defendant's guilt or innocence, the Court carefully considered those facts that it found proven beyond a reasonable doubt. The Court's findings of fact are as follows:

A.  On August 7, 2005, at 3:50 AM, Defendant, a fifty-four-year-old male in Rockville, Maryland under the America

Online ("AOL") screen name[1] "REDBD," initiated contact by instant message[2] with screen name "MadC Rad1992."

B.   The screen name "MadC Rad1992" described himself to "REDBD" as a thirteen-year-old boy named "Conrad" located in Herndon, Virginia.  His internet "profile" stated that he was a thirteen-year-old boy and his screen name contained the number "1992," which purports to be the year in which the individual was born.

C.   During all relevant times, the screen name "MadC Rad1992" was controlled in reality by a 26-year-old male in Florida by the name of Sean O'Connor, a member of an organization called Perverted Justice.[3]

D. In this "chat" conversation on August 7, 2005, the following dialogue occurred between Defendant and MadC Rad1992:[4]

---

[1]"A screen name is an appellation used to identify oneself in a chat room or when sending instant messages to another computer user.  Although it can be the user's real name, it is more often a pseudonym." *United States v. Mitchell*, 353 F.3d 552, 554 n.3 (7th Cir. 2003).

[2]As its name describes, an "instant message" is a one-on-one communication whereby two parties are able to engage in real-time dialogue by typing messages to one another and sending/receiving the messages almost instantly.

[3]Perverted Justice is an organization that is dedicated to exposing adults who use the Internet to seek sexual activity with children.  The *modus operandi* of the organization is to have members pose as a young children in internet "chat rooms" and wait to be contacted by adults that engage them in a sexual dialogue.  The organization often involves law enforcement and also may publish information about the adult, including the sexually explicit chat, on the Internet.

[4]Due to the informal nature of online "chatting," the conversations involve numerous typographical errors, symbols, shorthand, and abbreviations. For the sake of intelligibility of the conversation, this Court has not used "[sic]" to indicate every error or mistake in the original conversation.

```
REDBD [3:50 AM]:            hi
MadC Rad1992 [04:04 AM]:    yo
REDBD [04:04 AM]:           hey
MadC Rad1992 [04:05 AM]:    sorry u[you] im[instant
                           message] me earlier I was
                           eating a snak
MadC Rad1992 [04:05 AM]:    sup
REDBD [04:05 AM]:           ok y ou are only 13?
MadC Rad1992[04:05 AM]:     yup 13 m[male] herndon u?
...
REDBD [4:06 AM]:            you cute?
...
MadC Rad1992[04:06 AM]:     i have a pic[picture]
...
REDBD [04:07 AM]:           please
```

[At this time, Mr. O'Connor sent Defendant a child's

picture that he downloaded from an adoption website.]

```
MadC Rad1992[04:07 AM]:     r[are] u cute?
REDBD [04:07 AM]:           nah but for 54 im decent i
                           only ha[v]e x pics and dont
                           want to send them to you
                           because you are so young
...
REDBD [04:07 AM]:           you are very cute man wha ti
                           syour name
...
REDBD [04:09 AM]:           where do you live?
...
REDBD [04:09 AM]:           you alone
...
REDBD [04:09 AM]:           i would like to suck your dick
MadC Rad1992[04:09 AM]:     rlly? that would be way kewl
REDBD [04:10 AM]:           have you ever had someone suck
                           you
MadC Rad1992[04:10 AM]:     no i really want head
                           [fellatio] tho[though]
MadC Rad1992[04:10 AM]:     i wanna kno what its like
REDBD [04:10 AM]:           you jo[masturbate] alot?
...
REDBD [04:11 AM]:           doy oucum[sic] a lot
REDBD [04:11 AM]:           ever been naked whit a boy or
                           girl
MadC Rad1992[04:12 AM]:     no :(
```

[after MadC Rad 1992 describes that he would like to do

"stuff"]...

```
        REDBD [04:13 AM]:           well i can help you out
        MadC Rad1992[04:13AM]:    sweet :)
        ...
        REDBD [04:13 AM]:           you seem sweet
```

[After discussing that his father would be out of town
soon, but that he was not allowed to throw parties]...

```
        REDBD [04:14 AM]:           but we could still party
        REDBD [04:14 AM]:           just you and me
        ...
        REDBD [04:21 AM]:           maybe ill send you my pics
        ...
        REDBD [04:21 AM]:           you have mail
        ...
        REDBD [04:24 AM]:           you are sweet
        REDBD [04:24 AM]:           you are not a cop are you
```

[Defendant and "Conrad" discuss the death of Conrad's
mother]...

```
        REDBD [04:36 AM]:           how long ago did your mom die?
        ...
        MadC Rad1992[04:47 AM]:   6 yrs ago
        MadC Rad1992[04:47 AM]:   when I [w]as 7
        REDBD [04:47 AM]:           wow you were very young
        ...
        REDBD [04:51 AM]:           soy ou [sic] in herndon
        ...
        REDBD [04:51 AM]:           that far from me but you would
                                    be worth it
        REDBD [04:51 AM]:           you have nice dick?
        MadC Rad1992[04:51 AM]:   its ok
        MadC Rad1992[04:51 AM]:   it s like 5"
        REDBD [04:51 AM]:           cut?
        MadC Rad1992[04:51 AM]:   yep
        REDBD [04:51 AM]:           nice to sukc[sic] 5 ers
        MadC Rad1992[04:51 AM]:   well tehn u'll like 2 suck
                                    mine lol [laughing out loud]
        MadC Rad1992[04:52 AM]:   I dont got a lot of hair like
                                    alot of dudes is that kewl?
        REDBD [04:52 AM]:           sure
        REDBD [04:52 AM]:           you me aroudn your dick or on
                                    your body
        MadC Rad1992[04:52 AM]:   both
```

```
MadC Rad1992[04:52 AM]:   none on my body
REDBD [04:53 AM]:         i love smooth men
...
[Defendant and "Conrad" discuss the relationship of his
```
father and his girlfriend]...

```
REDBD [04:56 AM]:         ok
REDBD [04:56 AM]:         you hard now again
MadC Rad1992[04:56 AM]:   uhm yeah it never rlly left
                         lol
MadC Rad1992[04:56 AM]:   r u ?
REDBD [04:57 AM]:         lol
REDBD [04:57 AM]:         oh yes honey
```

E.   During the August 7th interaction, Defendant spoke on the phone with a person who posed as the thirteen-year-old "Conrad."  In reality, the voice on the phone was Alison Shea, a 24-year-old woman and also a member of Perverted Justice.  Shea had been corresponding with O'Connor during his sexual dialogue with Defendant.

F. Also during this conversation, Defendant and "Conrad" electronically exchanged pictures.  Mr. O'Connor, posing as "Conrad," provided Defendant with a picture of a young male that he downloaded from an adoption website.  In return, Defendant sent "Conrad" pornographic pictures of himself.  These sexually explicit pictures were of Defendant posing nude and engaging in fellatio with another male. (Govt. Ex. 4-1 through 4-5).

G. On August 10, 2005, the following dialogue occurred in a chat conversation between Defendant and MadC Rad1992:

```
MadC Rad1992[10:41 AM]:   hello
MadC Rad1992[10:41 AM]:   :)
```

5

```
MadC Rad1992[10:41 AM]:   UGH! its early!!!
REDBD [10:42 AM]:          hey cutie
MadC Rad1992[10:42 AM]:   hi!!!!
MadC Rad1992[10:42 AM]:   i got ur email
REDBD [10:42 AM]:          :)
REDBD [10:43 AM]:          im at work now. is dad still
                           at home?
REDBD [10:43 AM]:          i have to go
MadC Rad1992[10:42 AM]:   r u busy?
MadC Rad1992[10:42 AM]:   awww ok
....
```

H. On August 16, 2005, the following dialogue occurred

in a chat conversation between Defendant and MadC Rad1992:

```
...
REDBD [04:39 PM]:          let me call you soon
MadC Rad1992 [04:39 PM]:  how have you been ?
REDBD [04:39 PM]:          still in a meeting give me 20
                           more minutes is dad home?
MadC Rad1992[04:40 PM]:   ok
REDBD [04:40 PM]:          is dad home?
MadC Rad1992 [04:40 PM]:  no
REDBD [04:40 PM]:          is he away?
MadC Rad1992 [04:41 PM]:  he will be leaving tomorrow
REDBD [04:41 PM]:          for how long? you will be
                           alone?
MadC Rad1992 [04:41 PM]:  for until Friday or Sat. and
                           ya
MadC Rad1992 [04:41 PM]:  no1 [no one] is avialable to
                           stay with me
REDBD [04:41 PM]:          yummy
REDBD [04:41 PM]:          I can stay with you
REDBD [04:41 PM]:          lol
...
REDBD [04:50 PM]:          what is your scheudle tonite
                           and where do yolive again?
MadC Rad1992 [04:51 PM]:  Herndon man
...
REDBD [04:51 PM]:          can i cum[sic] over?
```

[Defendant and "Conrad" discuss when his father is

coming home that evening.]

```
REDBD [04:52 PM]:          what time does he cum[sic]
                           home tontie?
...
```

```
REDBD [04:57 PM]:          stats again?
MadC Rad1992 [04:58 PM]: 5'5" 120 lbs
MadC Rad1992 [04:58 PM]: what u doin tomorrow? cuz he
                           leaves
REDBD [04:57 PM]:          age?
MadC Rad1992 [04:58 PM]: u gotta work?
MadC Rad1992 [04:58 PM]: 13
REDBD [04:58 PM]:          im at work but could take off
                           sometime but for sure after
                           work i can cum[sic] over
REDBD [04:58 PM]:          you are only 13?
MadC Rad1992 [04:58 PM]: uhh yea
REDBD [04:58 PM]:          thats rape
MadC Rad1992 [04:59 PM]: dood I tell ya that before
REDBD [04:59 PM]:          yes i remember
MadC Rad1992 [04:59 PM]: oh ok
REDBD [04:59 PM]:          yes i remember
REDBD [04:59 PM]:          just that you are sooo sooo
                           young
REDBD [04:59 PM]:          ive never been with a young
                           man like you
REDBD [04:59 PM]:          but i would like to
...
MadC Rad1992 [04:59 PM]: i want 2 try stuff
REDBD [05:00 PM]:          i can let you try anything you
                           want
REDBD [05:00 PM]:          waht do you want to try
MadC Rad1992 [05:00 PM]: and i want u to suck me like
                           in that pic u sent me
REDBD [05:00 PM]:          i can suck your dick
REDBD [05:00 PM]:          \you ever been sucked?
MadC Rad1992 [05:00 PM]: no, never
MadC Rad1992 [05:00 PM]: im stoked 2 try it
REDBD [05:00 PM]:          you cut?
MadC Rad1992 [05:00 PM]: SOOO stoked
MadC Rad1992 [05:00 PM]: ya
REDBD [05:01 PM]:          yummy conrad
...
MadC Rad1992 [05:07 PM]: u like sucking? or beng suckd?
REDBD [05:07 PM]:          you tell me what you want to
                           do
REDBD [05:07 PM]:          I like sucking and being
                           sucked
REDBD [05:08 PM]:          i like ot kiss
MadC Rad1992 [05:08 PM]: i wanna try that
REDBD [05:08 PM]:          and rub assholes
MadC Rad1992 [05:08 PM]: ohh@ and kiss! kiss alot
MadC Rad1992 [05:08 PM]: ok,
```

7

```
REDBD [05:08 PM]:          you just have to be very clean
                           i your ass
REDBD [05:08 PM]:          no shit
MadC Rad1992 [05:08 PM]:   ohh
MadC Rad1992 [05:08 PM]:   can u show me?
REDBD [05:08 PM]:          how to clean your asshole?
MadC Rad1992 [05:08 PM]:   well
MadC Rad1992 [05:09 PM]:   i think im clean but i wanna
                           make sure im doin it rite u
                           know?
REDBD [05:09 PM]:          ok ic an hlep you
```

[Defendant and "Conrad" then discuss what time to meet
and also arrange a quick phone call from Defendant to "Conrad."]

I. On August 17, 2005, the following dialogue occurred
in a chat conversation between Defendant and MadC Rad1992:

```
...
REDBD [09:53 AM]:          So what the time my young sexy
                           guy
...
MadC Rad1992 [10:05 AM]:   what u want me to wear?
REDBD [10:05 AM]:          lol
REDBD [10:05 AM]:          NOTHING.
```

[Defendant and "Conrad" discuss what time to meet as
well as where the meeting will take place.]

```
...
REDBD [10:25 AM]:          sure I love to kiss have you
                           kissed many people?
REDBD [10:25 AM]:          boys or girls romantically
MadC Rad1992 [10:25 AM]:   just a girl but no tongue
REDBD [10:26 AM]:          tell me about that
MadC Rad1992 [10:26 AM]:   we were at a dance
MadC Rad1992 [10:26 AM]:   and then after we kissd
REDBD [10:26 AM]:          did you slow dance with here
MadC Rad1992 [10:26 AM]:   yeah
REDBD [10:26 AM]:          did you get hard when you
                           danced next to here
REDBD [10:25 AM]:          her
MadC Rad1992 [10:26 AM]:   yeah lol how did u know?
REDBD [10:25 AM]:          we all do that
...
REDBD [11:36 AM]:          im leavning now
```

8

(Govt. Ex. 1).

      J.   On August 17, around 12:00 PM, Defendant traveled from Maryland to Herndon, Virginia to meet "Conrad" to engage in sexual activity.   During this trip, Defendant made several phone calls to "Conrad" to inform him of his location and that he was "on his way."   (Govt. Ex. 9).

      K.   Defendant arrived at the address provided by "Conrad" and entered the house through the garage.   Unbeknownst to Defendant, the house was being used in a cooperative "sting" operation between NBC Dateline and Perverted Justice.

      L.   Defendant was filmed by a hidden camera and was quickly approached by NBC Dateline correspondent Chris Hansen, who began to question Defendant.

      M.   When asked by Hansen "what are you doing here?" Defendant replied, "Not something good...this isn't good." Hansen referenced the chat log and confronted him about the appearance that Defendant was "setting up a meeting with a 13-year-old boy."   (Govt. Ex. 6a).   Defendant made incriminating statements such as "You know I'm in trouble.   I know I'm in trouble."   Upon learning Hansen was from NBC Dateline and that he was being filmed, Defendant became upset and departed the house.

      N.   Defendant soon thereafter attempted to delete his entire America Online account "REDBD" as well as erase the hard drive of his computer at work.

## II.  Elements of 18 U.S.C. § 2422(b) and 2423(b)

On May 18, 2006, a grand jury returned a two-count indictment charging Defendant with one count of coercion and enticement in violation of 18 U.S.C. § 2422(b) and one count of travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b). On August 21, 2006, Defendant waived his Sixth Amendment right to a jury trial and requested a bench trial.

With respect to Count I, the statute 18 U.S.C. § 2422(b) is commonly used as a tool in the Federal Government's attempts to prevent sexual abuse of children using the Internet. The statute's text provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, *or attempts to do so*, shall be fined under this title and imprisoned not less than 5 years and not more than 30 years.

18 U.S.C. § 2422(b)(2006)(emphasis added). The statute's primary focus is on adults using the Internet to seek out and persuade minors to meet for the purpose of engaging in sexual activity. The statute is often used in the context of sting operations that involve adults posing as minors in an Internet "chat session." Many defendants have challenged this use of the statute, claiming

that an "actual minor" as a victim is required.  However, every
Court of Appeals to address this issue has uniformly upheld this
use of the statute and that an "actual minor" is not required.[5]

To convict under § 2422(b), the Government must prove
the following elements beyond a reasonable doubt: (1) use of a
facility of interstate commerce; (2) to knowingly persuade,
induce, entice, or coerce; (3) a person who is younger than
eighteen; (4) to engage in an illegal sexual activity.  *See
United States v. Helder*, 452 F.3d 751, 755 (8th Cir. 2006);
*United States v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004); *United
States v. Davis*, 165 Fed. Appx. 586, 588 (10th Cir. 2006);
*United States v. Bolen*, 136 Fed. Appx. 325, 329 (11th Cir. 2005).

Defendant has been charged with criminal attempt under
the statute since there was no actual minor involved and, as
such, the offense was not completed.  Consequently, the
Government must also prove that Defendant: (1) acted with the
kind of culpability required for a conviction of the underlying
substantive offense; (2) engaged in conduct that constitutes a
substantial step toward commission of the crime. *See United*

---

[5] In fact, Defendant challenged this use of the statute in this case,
but the Court denied his challenge and upheld the interpretation that the
statute does not require an "actual minor" in accordance with precedent.  *See
United States v. Tykarsky*, 446 F.3d 458 (3rd Cir. 2006); *United States v.
Blazek*, 431 F.3d 1104 (8th Cir. 2005); *United States v. Sims*, 428 F.3d 945,
959-60 (10th Cir. 2005); *United States v. Meek*, 366 F.3d 705, 717-20 (9th Cir.
2004); *United States v. Root*, 296 F.3d 1222, 1227-29 (11th Cir. 2002); *United
States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001); *United States v. Bailey*,
228 F.3d 637, 639 (6th Cir. 2000).

*States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001); *Helder*, 452 F.3d at 755.

With respect to Count II, the statute 18 U.S.C. § 2423(b) is used by the federal government to prevent the sexual abuse of children in interstate commerce. The statute's relevant text provides:

> A person who travels in interstate commerce . . . for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423(b).  From this text, to convict an individual under this statute, the Government must prove beyond a reasonable doubt that a defendant: (1) traveled in interstate commerce and (2) acted with the intent to engage in illicit sexual conduct. *See, e.g., United States v. Bredimus,* 352 F.3d 200, 208 (5th Cir. 2003); *United States v. Hersh*, 297 F.3d 1233, 1246 (11th Cir. 2002); *United States v. Gamache*, 156 F.3d 1, 8 (1st Cir. 1998); *United States v. Vang*, 128 F.3d 1065, 1068 (7th Cir. 1997).

### III. Application

In determining the guilt or innocence of an individual under a specific statute, the Court must apply the facts proven beyond a reasonable doubt to the elements of the offense. If all elements of the offense have been met by the Government, Defendant will be found guilty.  This Court will first address Defendant's alleged violation of § 2422(b) followed by Defendant's alleged violation of § 2423(b).

A.   Coercion and Enticement under § 2422(b)

1. *"Use of Facility of Interstate Commerce"*

First, the Government must prove that Defendant used a facility of interstate commerce.  A transmission of communication by means of the telephone or Internet constitutes the use of a facility of interstate commerce.  Use of the Internet, particularly Internet chat rooms, necessarily involves interstate communications and therefore constitutes the "use of a facility of interstate commerce."  *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004).  At trial, Defendant admitted that he communicated with "Conrad" using email and Internet instant messaging.  Therefore, Defendant used a facility of interstate commerce and this element of the offense is satisfied.

2. *"To Knowingly Persuade, Induce, Entice, or Coerce"*

Next, the Government must prove that Defendant knowingly attempted to *persuade, induce, entice, or coerce* the victim.  There is no definition for these terms included in the statute.  Generally, courts have treated this element as self-explanatory while some have provided dictionary definitions and alternative language to juries such as "convinced, influenced or made the possibility more appealing" and "to stimulate the occurrence of."  *United States v. Rashkovski*, 301 F.3d 1133, 1137 (9th Cir. 2002); *United States v. Murrell*, 368 F.3d 1283, 1287 (11th Cir. 2004).  This Court rests on the plain meaning of the

13

words in the statute in deciding whether the Government has satisfied this element.

The chat log between Defendant and "Conrad" (with excerpts provided *infra* Section I) provides more than sufficient evidence that Defendant persuaded, enticed, and induced the young boy to engage in a sexual act.  From the outset of the relationship, Defendant repeatedly provided "Conrad" with compliments of being "cute" and "sweet."  These compliments were followed not by sexual innuendo, but by blatant, aggressive sexual advances on "Conrad" such as "I want to suck your dick" and "have you ever had someone suck you?"  Defendant tells the child that he can let the child "try anything you want" and suggests other forms of oral and manual stimulation.  Such aggressive, persuading advances by an adult on a thirteen-year-old-boy are clearly attempts to induce and entice the child to engage in sexual activity.

Moreover, Defendant's attempts to persuade, induce, and entice do not end there.  Defendant sends sexually explicit pictures to Conrad depicting himself posing nude and engaging in sexual acts.  Defendant asked whether the young boy has "ever been naked with a boy or a girl" and offering "to help [Conrad] out."  Defendant asks personal, sexual questions to the child about masturbating, ejaculating, and whether he has a "nice dick."  This Court finds that the pictures and sexually suggestive advances on the child were direct attempts to

14

persuade, induce, and entice the child to engage in sexual activity.

Counsel for Defendant argues that these comments were not sincere, but instead were simply "talking dirty" over the Internet.  This Court strongly disagrees, and finds that these comments were backed by substantiated sexual intent as evidenced by Defendant's conduct.  Namely, Defendant consistently asked whether the child's father is home, scheduled a time to "cum[sic] over," and actually drove across state lines to "Conrad's" house. Defendant intended far more than "talking dirty."  He intended sexual activity.

Counsel for Defendant further argues that it was Defendant that was induced or enticed by the members of Perverted Justice posing as a thirteen-year-old boy.  Upon carefully looking at the chat logs in evidence, some of the interaction made by "Conrad"/Perverted Justice could certainly be considered as inviting sexually explicit responses. (*e.g.* "no i really want head tho").  Furthermore, this Court recognizes that Perverted Justice is an organization dedicated to exposing child molesters and clearly had a motive to "deliver" Defendant since it was being featured on NBC Dateline, receiving $100,000 from NBC. However, Defendant's argument proves to be unpersuasive for three reasons:

First, in almost any context, Defendant's language and actions in this case can only be regarded as an attempt to

persuade, entice, and induce the other individual to engage in a sexual activity. Defendant stated "I want to suck your dick" before any inviting language had been received by Defendant and Defendant sent sexually explicit pictures soon thereafter. This aggressive behavior, without any invitation from "MadC Rad 1992", would be considered an attempt to persuade, induce, and entice.

Second, as discussed in the next section, Defendant believed that he was interacting with a thirteen-year-old boy. No degree of interest, curiosity, or mutual enticement from a thirteen-year-old is enough to find that Defendant's aggressive language and actions are not an attempt to persuade, induce, and entice the individual to engage in sexual activity.

Third, Defendant's chat conversations with "Conrad" and his testimony clearly demonstrate his predisposition to engaging in sexual activity with persons from Internet conversations, including thirteen-year-old males.

Therefore, this Court finds beyond a reasonable doubt that the statements and the pictures from Defendant to "Conrad" were an attempt to persuade, induce, and entice the individual under screen name "MadC Rad1992" to engage in sexual activity.

3. *"A person younger than eighteen years of age"*

Third, the Government must prove that Defendant believed that the individual he was persuading, inducing, and enticing was *below eighteen years of age*. As stated *infra,* the Government need not prove the existence of an "actual minor" but

only that Defendant believed that "Conrad" was below eighteen years of age.  Defendant argues that he believed he was meeting a young adult (of consenting age) for a homosexual encounter and that the picture and voice of the person purporting to be "Conrad" were that of an eighteen-year-old male.   After evaluating the evidence, the Court is not persuaded by Defendant's arguments and finds that Defendant believed the individual he was inducing, enticing, and persuading was a thirteen-year-old male.

First, the evidence shows that on August 7, 2005, Defendant was aware of "Conrad's" age even before the initial contact.  Without any reference to age by "Conrad," Defendant stated "ok y ou are only 13?" in the third instant message he ever sent to the screen name MadC Rad1992.  This fact alone shows that Defendant either (1) previously viewed "Conrad's" online profile (which contained his age), discovered he was thirteen-years-old, and then initiated contact; or (2) viewed "Conrad's" screen name of MadC Rad1992, assumed this was a reference to the year in which the individual was born (thirteen years prior in 2005), and then initiated contact.  Either scenario requires Defendant to have affirmative knowledge of the child's age even before the first contact.

Second, Defendant repeatedly acknowledged "Conrad" as "young" and as a thirteen-year-old boy in online conversations that occurred between August 7-17, 2005: "I only ha[v]e x pics

17

and don't want to send them to you because you are so young", "for a 13 yr old you handle yourself very well", "you are only 13? thats rape", "you are sooo sooo young", and "ive never been with a young man like you/but would like to."  This repeating, unambiguous acknowledgment of "Conrad's" age leads this Court to conclude that Defendant believed that he was persuading, inducing, and enticing an individual of thirteen years of age.

        Defendant's testimony that he believed he was going to meet a young adult for a homosexual encounter is not persuasive for two reasons.  First, when viewed in light of the chat log and the videotape of his interview with the NBC Dateline correspondent, Defendant's statement that he was meeting a young adult is not credible.  Upon being confronted by the correspondent, Defendant's demeanor, body language, and facial reaction is one of complete and utter shock.  This is followed by Defendant stating "I know I'm in trouble" and when asked "what are you doing here" Defendant said "not something good." Defendant's behavior is not consistent with his testimony that he believed he was meeting a young adult, but instead, corroborates the extensive chat log portraying Defendant's belief that "Conrad" was a thirteen-year-old boy.  Second, the Court did not find Defendant's testimony to be credible in its assessment of his veracity, demeanor, cadence, tenor, and inflection of his voice as well as the consistency of his answers on cross examination.

Defendant proffered expert testimony at trial to discuss the picture and voice of the person Perverted Justice purported to be "Conrad." With respect to the picture, an expert testified that the child depicted in the picture emailed to Defendant appears to have fully developed facial features, and accordingly, the child depicted in the picture could be an eighteen-year-old male.  On cross examination, the expert testified that he could not give the exact age of the child with any degree of certainty, but, as expected, could only offer a range within which the child's age is likely to fall.  The expert concluded the child in the picture could be eighteen, but he could also be much younger.

Defense counsel argues that since the picture depicts a person that could be an eighteen-year-old, it provides reasonable doubt with respect to Defendant's mental state that he believed he was enticing a minor for sex.  This Court disagrees.  Even if this Court agreed with the expert's testimony, the expert testified only that the age "could be" that of an eighteen-year-old.  Never did the expert testify that the picture could not also reasonable depict a thirteen-year-old boy.  This tentative, inconclusive testimony, received in light of the overwhelming evidence provided in the chat log that Defendant sought out a thirteen-year-old boy and confirmed his age several times, does not create a reasonable doubt that Defendant believed he was

19

enticing, persuading, and inducing a thirteen-year-old boy to engage in a sexual activity.

Defendant's voice expert testified that the frequency of one's voice depends upon gender and age. For instance, the frequency of an adult female's voice is between 180 and 250 Hz, while an adult male's voice is between 100 and 150 Hz, consistent with the general understanding that a man's voice sounds lower in pitch than a female's. The expert analyzed a video-recording of a female from Perverted Justice speaking on the phone to Defendant (as "Conrad") and testified that the frequency of the woman's voice on the phone was 184 to 190 Hz (at the lower end of the spectrum for a female). Finally, the expert testified that the average frequency of the voice of a thirteen-and-a-half-year-old male is between that of an adult male and an adult female, centered around 174 Hz. In fact, on cross examination, the expert admitted that the frequency of the voice on the phone overlaps with that of a thirteen-year-old male:

> Q[by Government]
> So if you assume [the voice on the phone is] a male instead of a female, that frequency is actually between the age of 12.2 and 13.5, correct?
>
> A[by voice expert]
> That would be correct.

(Trial Tr. of Aug. 22, 2006, 297). This testimony does not persuade the Court in the slightest that Defendant believed he was speaking to an adult male. Instead, this testimony is entirely consistent with the overwhelming evidence of Defendant's

belief that he was speaking to a thirteen-year-old boy, since the actual person to whom he was speaking had a pitch of 184 Hz to 190 Hz, and the pitch of a thirteen-year-old boy's voice overlaps that range.

In sum, Defendant's personal testimony is not credible and his expert testimony is not persuasive. The extensive chat log and Defendant's behavior during his video-interrogation lead this Court to conclude beyond a reasonable doubt that Defendant believed he was "enticing, persuading, and inducing" an individual that was thirteen years of age.

*4.  To engage in illegal sexual activity*

Fourth, the Government must prove that Defendant was enticing, persuading, or inducing the minor *to engage in illegal sexual activity*, or, as the statute reads: "any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b).

There is little question that Defendant intended to engage in sexual activity. He sent "Conrad" sexually explicit pictures and suggested numerous sexual activities in the chat conversation. Therefore, the inquiry becomes whether engaging in sexual activity with a thirteen-year-old boy is an act that can be charged as a crime. *United States v. Patten*, 397 F.3d 1100 (8th Cir. 2005). This includes state sexual offenses. *See, e.g., United States v. Rayl*, 270 F.3d 709, 713 (8th Cir. 2001). The Government need not prove all the elements of the offense to

21

establish a conviction under 18 U.S.C. § 2422(b).  Instead, the Government must only prove that the sexual act intended by Defendant would constitute a criminal offense under the statute.

The Government alleges that Defendant's intended conduct was in violation of the Code of Virginia, § 18.2-370, taking indecent liberties with a child.  This Virginia statute criminalizes sexual conduct with an individual under the age of fifteen.  In this case, as stated several times, Defendant intended to engage in sexual activity with a thirteen-year-old boy.  This conduct is clearly within the scope of the Virginia indecent liberties statute, and thus, chargeable as a criminal offense.  Thus, the Government has satisfied this final element of the substantive offense under 18 U.S.C. § 2422(b).

5.  *"Or attempts to do so"*

Defendant has been charged with criminal attempt under the statute since there was no actual minor involved and, as such, the offense was not completed.  Consequently, the Government must also prove that Defendant: (1) acted with the kind of culpability required for a conviction of the underlying substantive offense; (2) engaged in conduct that constitutes a substantial step toward commission of the crime. *See United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001); *Helder*, 452 F.3d at 755.

Whether Defendant had the requisite culpability for the underlying offense can be addressed by inquiring whether

22

Defendant intended to complete the offense.  If Defendant intended to complete the offense, then it logically follows that he had the requisite culpability.  From the previous analysis in subparts 1-4, the evidence clearly shows that Defendant *intended* to: (1) use the Internet; (2) to *knowingly* persuade, induce, or entice; (3) an individual he believed was under the age of eighteen; (4) to engage in illegal sexual activity.  In fact, the only element Defendant contests that he did not have knowledge of was that the individual was under eighteen, and that claim was not credible and contrary to the evidence before the Court.  Therefore, this Court concludes that he intended to complete the offense and thus had the requisite culpability.[6]

The final inquiry is whether Defendant's conduct constitutes a "substantial step" toward the commission of the crime.  *Id.*  This element is satisfied by actual, objective acts that, independent of Defendant's mental state, strongly corroborate and provide unequivocal evidence of his culpability. *Id.* at 1229.

In prosecutions under 2422(b) resulting from a sting operation, courts have deemed this element satisfied by the presence of several facts: (1) sexual dialog between Defendant

---

[6] In *United States v. Root*, the Eleventh Circuit found that the defendant intended to complete the substantive offense by reviewing the online transcript ("chat log") stating that: (1) Defendant wanted to feel [victim's] "little nipples"; (2) Defendant had "never been with one your age," but would enjoy it, and (3) Defendant knew he could "get into a lot of trouble" for engaging in the activity he proposed.  296 F.3d 1222, 1228 (11th Cir. 2002).

and the "minor;" (2) repeated references to what would be performed upon meeting the minor; (3) the transmission of a sexually suggestive photograph; and (4) travel by Defendant to meet the minor. *See, e.g., United States v. Meek*, 366 F.3d 705, 720 (9th Cir. 2004); *Root*, 296 F.3d at 1229.

The instant case contains all four of these circumstances, any of which would likely be sufficient by themselves to constitute a substantial step. Defendant engaged in extensive sexual dialog with the minor and referenced the sexual activities that would occur upon meeting the minor. Additionally, he transmitted pornographic images of himself posing and performing sex acts. Finally, he drove an automobile from Rockville, Maryland to Herndon, Virginia, parked the car, walked into the house, and waited in the kitchen. From these facts, there is no question that Defendant's acts constitute a substantial step towards the commission of the crime and provide significant corroboration of his culpability.

In summation, with respect to Count I, the Government has satisfied all elements required for a conviction under 18 U.S.C. 2422(b). Specifically, the Government has proven beyond a reasonable doubt that (1) Defendant used a facility of interstate commerce, (the internet); (2) to attempt to knowingly persuade, induce, entice, or coerce; (3) a person Defendant believed to be less than eighteen years of age; (4) to engage in an illegal sexual activity. Additionally, Defendant possessed the

culpability required to complete the substantive offense and his actions constitute a substantial step towards the completion of the offense.  Therefore, this Court finds Defendant guilty of violating 18 U.S.C. § 2422(b).

### B. Travel with Intent to Engage in Illicit Sexual Conduct under § 2423

Defendant has also been charged with travel with intent to engage in illicit sexual conduct under 18 U.S.C. § 2423.  To convict under this statute, the Government must prove beyond a reasonable doubt that Defendant (1) traveled in interstate commerce and (2) acted with the intent to engage in illicit sexual conduct.  It is under this framework that the Court proceeds with its analysis of Count II.

*1. Travel in interstate commerce*

To "travel in interstate commerce" simply means to move from one state to another.  Defendant has admitted that he traveled from Maryland to Virginia, therefore, this element is satisfied.

*2. Intent to engage in illicit sexual conduct*

Next, the Government must prove that Defendant had the intent to engage in illicit sexual conduct.  The term "illicit sexual conduct" is defined in 18 U.S.C. § 2423(f) as "a sexual act(as defined in section 2246) with a person under 18 years of age that would be in violation of Chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of

the United States."[7]  Put simply, the Government must prove that

Defendant traveled with the intent to engage in sexual activity

which, if it had occurred, could have been charged as an offense

in a federal enclave.  Section 2243(a)(within chapter 109A)

criminalizes knowingly engaging in a sexual act with a person who

"has not attained the age of 16 years."  18 U.S.C. § 2243(a).

Therefore, if Defendant intended to engage in a sexual activity

with a thirteen-year-old boy, as the Government alleges in this

case, such activity is squarely within the meaning of "illicit

sexual conduct" in § 2423(b).[8]

        This Court finds this element is satisfied since

Defendant traveled with the intent to engage in sexual activity

with a thirteen-year-old boy.  First, it is unmistakable from the

---

[7] Section 2246 defines a "sexual act" as:

    (A)   contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

    (B)   contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

    (C)   the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

    (D)   the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

18 U.S.C. § 2246

[8] It is not required that Defendant engage in the intended illegal sex at the destination, but solely that he act with the intent.  *Hersh,* 297 F.3d at 1246-47.

evidence that Defendant intended to engage in sexual activity at his destination.  In fact, Defendant admitted so at trial when testifying that he was traveling to engage in homosexual activity, with a "young adult" nonetheless.  In light of these admissions, there is little left for this Court to decide on the issue of whether Defendant intended to engage in sexual activity.

Next, this Court must decide whether this intended sexual activity is considered "illicit sexual conduct" within the meaning of the statute.  As stated previously in Section A.3, this Court has concluded beyond a reasonable doubt that Defendant believed he was enticing, inducing, and persuading an individual he believed was a thirteen-year-old boy.  There is no evidence before the Court (nor does defense counsel argue) that Defendant's mental state as to "Conrad's" age changed between the time he was "inducing, enticing, and persuading" over the internet and the time he was traveling almost immediately thereafter.  Defendant's mental state whilst traveling is confirmed by his statements to the NBC Dateline correspondent once in Herndon, Virginia.  When asked "what are you doing here" Defendant replies "not something good" and "I know I'm in trouble."

In sum, Defendant's repeated acknowledgment of "Conrad's" age and his incriminating statements in the confrontation with NBC lead this Court to conclude that Defendant clearly intended to meet a thirteen-year-old boy for sex.  Since

Defendant intended to engage in sexual activity with a thirteen-year-old boy, and such sexual activity is considered "illicit sexual conduct" within the meaning of the statute, this Court concludes that this element of § 2423(b) is satisfied.

Since both elements of § 2423(b) are satisfied beyond a reasonable doubt, that Defendant traveled across state lines and that such travel was with the intent to engage in illicit sexual conduct, this Court finds Defendant guilty of violating 18 U.S.C. § 2423(b).

### IV. Conclusion

For the foregoing reasons, this Court finds Defendant guilty of one count of coercion and enticement in violation of 18 U.S.C. § 2422(b)(Count I) and one count of travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b)(Count II).


September 6, 2006                    _____/s/_____
Alexandria, Virginia                        James C. Cacheris
                                     UNITED STATES DISTRICT COURT JUDGE

28