

# Ronald I. Weiner, PHD, LLC

Ronald I. Weiner, Ph.D., LCSW-C
Executive Director
801 Roeder Road, Suite 950
Silver Spring, Maryland 20910
Tel:   301-949-4907
Fax:   301-585-8740
www.rweinerphdllc.com

September 16, 2013

Mr. Patrick Anderson
Anderson & Wooditch, PC
333 N. Fairfax Street, Suite 310
Alexandria, VA 22314

Re: David Kaye

Dear Mr. Anderson:

      The purpose of this letter is to provide you with a status report on your client who is the subject of a forthcoming violation of probation hearing scheduled for September 27, 2013, in U.S. District Court for the Eastern District of Virginia (Alexandria).

      Mr. Kaye has been receiving weekly mandatory sex offender treatment services involving both individual and group sessions with me at our clinic since September 15, 2011. We are the approved treatment vendor to provide such services to the United States Probation Office in the District of Maryland as well as for the Federal Bureau of Prisons for inmates who are transitioning back to the community while placed in residential correctional center. Mr. Kaye began treatment services with me while still in the custody of the Bureau of Prisons. He was placed at one of the RCC (Regional Correctional Centers) for a period of six months prior to his discharge to the U.S. Probation Office under the supervision of United States Probation Officer Deborah Thorpe.  His adjustment while at the RCC Montgomery County Pre-Release Center

was, for the most part, positive. He was released in February 2012 and was required to continue sex offender treatment services with me as a condition of his probation under the supervision of United States Probation Officer Deborah Thorpe. Mr. Kaye has attended each and every scheduled treatment session without delay and has demonstrated a willingness to utilize treatment services effectively by being fully engaged in working on efforts to remain offense free. He is required to complete routine polygraphs to demonstrate that he has not engaged in any type of hands-on offense with any underage minor and the results of said polygraphs show that he has not shown evidence of engaging in any conduct that would indicate that he has offended against a minor. In addition, his polygraph reports have shown that he has not engaged in any conduct related to attempting to meet any underage minors for sexual activity.

Mr. Kaye is a homosexual man who has struggled with efforts to contain a lifestyle involving engaging with other homosexual men in anonymous sexual liaisons. Since being placed on probation supervision under USPO Thorpe and under my care and treatment, he has acted-out on a few occasions by engaging with other homosexual men in having anonymous sex with them. Some of these encounters resulted from meeting someone on the street; others by a chance encounter with another male who was in a car and Mr. Kaye and the stranger would signal each other and arrange to have sexual contact at Mr. Kaye's home. Mr. Kaye has reported these instances to me during therapy sessions and has been counseled by me that such meetings are potentially dangerous related to his physical safety as well as dangerous from the standpoint of his contracting sexually transmitted disease or HIV.

Mr. Kaye fully understands that his original offense conduct demonstrated that he was willing to meet with an underage minor for sexual contact. He is before the Court related to his disclosing to Ms. Thorpe and to me recently that he had been using the Internet via Craig's List to try to arrange to meet an anonymous adult male for homosexual contact. He reported such information to me on the cusp of his being required to complete a scheduled maintenance polygraph. His disclosure was of immediate concern to both me and USPO Thorpe because it represented to both of us concern that he was back in his offense cycle/pattern wherein he could make contact with underage minors for sexual contact. He reported that he had not done so and this information was verified by his taking a maintenance polygraph which showed that he was being truthful and was only attempting to contact adult males for anonymous sexual liaisons.

Since his original disclosure regarding use of the Internet via Craig's List in making contact with an adult male to meet for a possible sexual liaison, Mr. Kaye has reported on one of his recent written accountability reporting form that he has engaged in discussions with at least one co-worker on his current job about engaging in a sexual liaison at some site off work, which Mr. Kaye refused to take him up on. However, he reported that he did participate in a single episode with this same employee in the restroom involving masturbation each on their self. Mr. Kaye reported that no further episodes have occurred since that time. He also reported that he has been sexually attracted to other co-workers at his place of employment but has not initiated any sexual contact with co-workers and did not initiate the sexual encounter with the co-worker described above.

Mr. Kaye is aware that his recent acting-out episodes have posed him as being back into his offense cycle, but maintains that he hasn't acted out with any underage minors, which we have verified to be truthful via his recent polygraph testing. What we have with Mr. Kaye is an older man who is trying to get his sexual and emotional needs met in very simplistic and dangerous ways, something that he has been doing for decades. His sexual orientation is not the issue here and, it is clear, that his preference for anonymous sexual activity with other adult men represents personal choice on his part to risk to potential sexually transmitted disease and potential aggressive attacks by men that he does not know and lacks any knowledge as to their intentions. These known risk factors in and of themselves, and his choice to engage in them, cannot be policed and, under normal circumstances, he would have a perfect right to engage in such activities. It is exactly this behavior, however, that led to his offense conduct, in terms of his willingness to engage a male minor in sexual activity, which happened to be a sting operation (Dateline). Mr. Kaye maintains that he would never again allow himself to engage with a minor in sexual activity currently or in the future. This represents the challenge for both his treatment and his probation supervision. While I believe clinically that he is fully committed to the value of not engaging a minor in sexual activity currently or in the future, he will need to work harder in his sex offender treatment by demonstrating that he is willing to avoid engaging in anonymous sexual activity with men whether on the Internet or by personal contact. By so doing, he demonstrates effective behavioral controls over his sexual impulses as well as preventing himself from being back in his original offense cycle.

To sum up, Mr. Kaye needs to be consistent rather than erratic in showing evidence that he is willing to avoid any and all risky situations that involve engaging in

homosexual anonymous sexual contacts with any and all persons while under supervision as well as in treatment. If he can demonstrate such commitment for the next year, he should be able to successfully complete his treatment requirements and be discharged to aftercare status. Even after successful completion of treatment, Mr. Kaye will need to continue to demonstrate compliance with supervision requirements for the time that he has remaining on probation and curb his predilection to engage in anonymous sexual activity with adult males, thus requiring on-going monitoring via supervision polygraphs.

Aside from concerns about his sexual behavior, which he has self-reported, Mr. Kaye has shown evidence of working hard in his treatment to develop a code of moral conduct for himself that precludes sexual activity with underage minors. He is a very complicated and likeable man. He provides excellent feedback to the other men in his treatment group regarding problematic risky behaviors that they have engaged in and provides feedback on possible solutions that address the underlying factors that led to their putting themselves in risky situations. He needs to apply this same logic and understanding to his own actions.

Mr. Kaye is gainfully employed. His support system has shrunk over the span of the last two years. He has been the target of efforts on the part of his religious community to bar him from participating in Jewish services at a synagogue he was originally allowed to worship. The membership of his congregation split over his being given permission to worship and the vote for removing him as a congregant passed causing him to experience a deep sense of personal shame and isolation. This set him back in terms of his capacity for demonstrating effective emotional management skills and he has not, in my professional opinion, fully recovered from that set back which made him the target, once again, of notoriety given that his situation with the synagogue was covered by the Washington Post Newspaper.

I believe that Mr. Kaye requires additional treatment services to assist him in showing effective behavioral controls on a consistent and regular basis. If I thought that he was at risk of offending against an underage minor, I would very clear with the Court and the government about this. I do not believe this to be the case. However, I believe that the Court in considering how to best rule on the violation of probation, should set some very specific guidelines for him to follow related to the issues specified in my report if he is to be granted approval to remain in the community on probation status.

Should you have any additional questions for me, please feel free to contact me.

Sincerely yours,

*Ronald I. Weiner/*Electronic Signature
Ronald I. Weiner, Ph.D., LCSW-C
Executive Director
Maryland License # 00133
ATSA Clinical Member