**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) **CASE NO. 1:06CR00205-001** |
| **vs.** | ) |
| | ) |
| **DAVID KAYE,** | ) |
| | ) |
| **Defendant.** | ) |

## DEFENDANT'S POSITION ON SUPERVISED RELEASE VIOLATION PETITION

COMES NOW the Defendant, DAVID KAYE, (hereinafter referred to as "Kaye"), by counsel, and files the following memorandum to be considered by the court at his sentencing.

## PROCEDURAL HISTORY

Kaye was convicted of violating 18 U.S.C. §2422(b) and 18 U.S.C. §2423(b) and sentenced by this Court on December 1, 2006 to a period of 78 months' incarceration and ten years of supervised release. On January 13, 2012, Kaye was released from the Montgomery County PreRelease Center to begin his term of supervised release. He is currently supervised by Probation Officer, Jessica Turro. Kaye has had three prior violations. The first was heard by this Court on September 27, 2013. At that hearing he was given five days active incarceration, and ten years of supervised release with the added condition that he not access internet devices without prior approval.

Kaye appeared again before this Court for a probation violation hearing on May 14, 2015 at 10:00am. The violation was based on non-compliance with two of the special terms of probation ordered by this Court: possessing multiple electronic devices to access the internet without prior approval, and possessing two DVD's of adult pornography. Kaye was given time

served for the months he had already spent incarcerated and placed back on probation. After returning to probation, Kaye was violated again, and appeared before this court on September 17, 2015, for accessing the internet at a public library without prior approval. On that date, this Court ordered that he be incarcerated for six months, continue on supervised release for ten years with the following three additional conditions:

(1) Kaye shall provide the probation officer with access to any requested financial information;

(2) He shall not open additional lines of credit or enter into contracts (including but not limited to cellular telephone or internet date plan contracts); and

(3) he shall satisfactorily participate in a mental health treatment program approved by the probation officer, which may include evaluation counseling, and testing as deemed necessary by the probation officer.

After returning to probation, Kaye was violated once more, and will appear in front of this Court on February 23, 2018 to address it. He is being violated for opening additional lines of credit without prior approval, and for using an internet-capable Smart TV and Blue-Ray DVD player without prior approval.

## **BACKGROUND**

Kaye is sixty-four years old. He is a father to two daughters and a grandfather to one grandson. Kaye struggled with his sexuality for years. He married his now ex-wife in 1972, but throughout his marriage he battled attractions to other men. Nevertheless, Kaye hid these feelings. Outwardly, he and his wife, along with their two daughters, were a model family. They lived in Maryland where he worked as a rabbi and his wife was a school teacher. He describes

2

this time as the happiest period in his life. Kaye is deeply religious and loved teaching Judaism. He enjoyed being part of peoples' lives, both in their times of need and in times of joy.

After he was passed over for a promotion, Kaye left his synagogue in Maryland where he had been an assistant rabbi for eighteen years. Kaye and his family moved briefly to San Antonio, Texas to pursue another rabbinical position. However, the experience was not what they had hoped, and they moved back to Maryland after only a few months. Kaye found work at a nonprofit organization planning school programs for Jewish teenagers.

Meanwhile, Kaye and his wife began divorce proceedings. Their thirty-year marriage ended primarily because Kaye finally confronted his sexuality and no longer denied he was gay. Though their relationship was strained immediately after the split, Kaye and his ex-wife are now on good terms. Kaye also maintains a good relationship with his two children, although he admits his criminal conduct created distance between him and his two daughters. He is unsure they will ever be as close as they once were.

After four years back in Maryland, Kaye committed the underlying offense. While in an online chat room, Kaye planned a sexual encounter with someone he believed to be a thirteen-year-old boy. This individual was actually an undercover adult and an actor on Dateline's television show *To Catch a Predator*. Thus, Kaye's arrest was not only the lowest point in his life, but also national entertainment. Following a bench trial, Kaye was convicted and sentenced to 78 months' incarceration. He immediately began serving his sentence and was released from custody on January 1, 2013.

While some individuals funneled through the prison system are released without serious lasting effects, the difficulties reentering civil society as a registered sex offender are well-known. Neighborhoods are often leafleted, computer databases advertise and encourage

3

searches, and finding employment can be almost impossible. In a dissenting opinion, Justice Ginsburg recognized these difficulties, and discussed community notification's "onerous and intrusive obligations" on the offender, the resulting "profound humiliation and community-wide ostracism," its resemblance to historical practices of shaming, reliance upon convictions rather than present dangerousness, and the law's "excessiveness in relation to its non-punitive purpose." *Smith v. Doe*, 123 S. Ct. 1140 (2003).

Kaye experiences these difficulties in the extreme. The circumstances surrounding his arrest have made the re-entry process excruciating. Simply typing Kaye's name in an internet browser reveals hundreds of video clips and news articles. Literally any person in the world connected to the internet can watch Kaye's crimes being committed over and over again, and his face dons the cover of the *To Catch a Predator* book. It is difficult to imagine the negative effect this type of infamy would have on one's mental state and self-worth.

It should be noted that Kaye has been successful in many areas of his probation. He participates in sex offender treatment through Clinical and Forensic Services, through Dr. Celena Gates. He also participated in treatment with Dr. Ronald Weiner, an experienced therapist who has been working with sex offenders for over 40 years. In January, 2015, Dr. Weiner advised that he stop attending weekly treatment group sessions and he was moved to aftercare because of the progress he had been making. On December 30, 2014, Kaye successfully passed his maintenance polygraph exam. Additionally, prior to his previous two violations, Kaye maintained full employment with Gate Gourmet consistently and without incident for two years. After being arrested, Gate Gourmet was forced to terminate Kaye's employment as their company could not hold a position for someone with no date of return. Upon release, Kaye again found himself in

4

search of a job- a difficult task for someone who is both a convicted felon and who must register on the sex offender registry.

The last date of release from incarceration for Kaye was in January of 2016. He maintained his condominium in Rockville, Maryland, and was able to move back home because of this. He refinanced it in 2016, and the condo is now in both his name and his brother Dale's name. His primary goal was to find a job and focus on his therapy. When he was released, there were additional conditions to his supervised probation, including not being able to take out any lines of credit without permission, and that his financial records had to be available to his probation officer.

Additionally, he was also ordered to undergo a mental health evaluation and comply with all recommended treatment. Kaye has now finished with the evaluation and recommended treatment. He saw Dr. Tedassi for mental health treatment and was released after successfully completing all requirements in the Spring of 2017. Kaye has never missed any therapy session or group. Dr. Tedassi reported that Kaye initially came in March of 2012, for a psychiatric evaluation and to see if he would benefit from any medication. As a result of this evaluation, he was diagnosed with Major Depressive Disorder. In regard to medication, he was put on Zoloft (15mg) and told to engage in individual therapy. He was paying out of his own pocket and had an appointment once a month for an individual session, starting in June. He had one appointment per month from June to August. At this time, he was dealing with previous violations before this Court. After those had been finished, he began treatment again in February of 2016, and became involved in sessions exclusively with Dr. Tedassi. A mental health assessment was completed, and he was diagnosed with Generalized Anxiety Disorder, in addition to his previous diagnosis of Major Depressive Disorder. He was still taking Zoloft, and he was doing weekly one-hour

5

sessions with Dr. Tedassi. This began on February 9, 2016. In September of 2016, the sessions changed from weekly to once every other week. This lasted until March, 2017, when Kaye was then told he only needed to make an appointment once per month. This went through the last day of his attendance, July 11, 2017, and the case was closed successfully. Dr. Tedassi never thought it necessary for Kaye to complete group sessions.

Expectedly, he has been running into many roadblocks looking for a job, especially without the use of the internet. Eventually, he was able to find a job at Parts Authority, in March of 2016. This did not last very long, and he only worked there until August of 2016. He was let go because he was not able to keep up. The job was a warehouse job, and required picking car parts off of shelves and bringing them up front for shipping.

Kaye would find that getting job offers was no problem at all, but that as soon as they performed a background check, he was rejected. Some of the jobs he was rejected from include Costco, CVS, Enterprise, and even a printing press company. He even had an offer from the Federal Government at the Navy Exchange, a shopping area in Bethesda at Walter Reed. However, the outcome was the same, and he was not able to work there. Eventually, he applied to Amazon and was hired. He began the job in October of 2017, and is still employed there. He works there about twenty hours a week. It is a warehouse job in Rockville, Maryland, just minutes from his home. He works from 9:00pm to 1:00am, on the night shift. Kaye received the employee of the month award this past November. The company started a new way of sorting packages, and Kaye volunteered to be the one to start the operation. The site manager took note of that and gave him the award after he had only been working there for six weeks. He loves working there. Kaye also works at Penn Parking. He was hired in September of 2017, and works

6

about twenty hours a week, from 2:00pm to 6:30pm. Penn Parking is a Montgomery County parking garage. It is an automated garage, and Kaye helps people if they run into any issues.

Before he started working at Amazon, Kaye was working for the Washington Jewish Funeral Practices Committee. He started in May of 2017, and is still on their books, though he has not worked for them since September because of his two new jobs. When someone dies, it is a ritual, and a compassionate thing for someone to be with a Jewish body from the time they die until the burial. The committee has a group of ten (10) to twelve (12) people that are available to go to the funeral home and stay with the body, essentially guarding it from evil spirits, until the time of burial. Kaye is one of these members.

Kaye's current sources of income include his jobs, Social Security, and his IRA, though he is trying to wean himself off of relying on it. He is maintaining stable employment as well as financial stability. He was on food stamps for all of 2016, and has just recently stopped using them, in October of 2017. Kaye does, however, still get some energy assistance for his electrical bills from Montgomery County. While he was looking for jobs, he volunteered as an usher at Strathmore Music Center, a North Bethesda concert hall. They look mostly for elderly people, and Kaye helped out eight to ten times a month, for different events, symphonies, and concerts. He did this throughout 2016, and is still doing it, though admittedly not as frequently as before. He also just started doing the same thing at Arena Stage, a venue in the District of Columbia. The venue puts on Broadway shows, and other similar programs.

Kaye has also been taking courses at Osher, an adult continuing education program at Johns Hopkins University, on the Shady Grove campus. He goes three days a week, and takes four classes, each lasting about two hours. These classes are a great way for retirees to stay current. They learn a lot about politics, literature, and even music.

7

In January of 2017, Kaye rescued a dog. Her name is Latke and she is three-year old Dachshund. He is terrified of what could happen to her if he has to be incarcerated again, as he does not have anyone that could take her. He has been talking to the shelter that he rescued her from, and they are not sure what to do at this point. She has brought him great joy in his life, as he has also done for her.

Since Kaye was convicted of the underlying offense, he has a difficult relationship with the Jewish Community in D.C. He has not really found a community that will welcome him fully and that he feels comfortable with. However, he now has a synagogue that welcomes him. It is the synagogue his brother Dale belongs to, and it is in Silver Spring. Unfortunately, it is not really his style, but he is happy to be welcomed, and knows that he can attend whenever. **See Attachment A.**

Kaye has a very supportive family. He has three brothers. Donald is seventy and lives in Atlanta, and he has two brothers that live in Maryland: Dennis, fifty-five years old, and Dale, fifty-three years old. Dale is his biggest support, and the feeling is reciprocated from Kaye. Dale has a wife and son that Kaye is also very close with. Both of Kaye's parents are deceased. In regard to friends, Kaye has a very good support system in that respect as well. There are three families that he has known for many years, all of them supportive. If there is a crisis or he is feeling depressed, he goes to them. First is the Teichman family, consisting of married couple Marsha and Kevin. Kaye has known Marsha since college and they talk to each other at least once every other week. **See Attachment B.** The second family is the Levit-Mintzies family, consisting of Paula and Jan. Paula is a social worker by trade, and very into meditation and being one with the body and mind. Kaye has known Paula for about twenty years, from the synagogue that he was previously the rabbi of. **See Attachment C.** The third family is the Hausman family,

8

consisting of Bob and Carol. He has known Carol for about twenty years, through contacts in the Jewish community. He met her through a healing network. She is a psychologist. Carol and Bob belonged to the main synagogue that rejected him publicly, and they led the effort to have that synagogue accept him, though he was ultimately rejected. **See Attachment D.** These three families all live in the area, and are very supportive of Kaye.

As previously mentioned, Kaye has two adult daughters, both married. His first daughter is Shannon. She is thirty-nine years old and has been married to Pete for nine years. Pete is a marine and so they move around a lot, and currently live in Harrisburg, Pennsylvania. They have two children: Ryan, seven years old, and Abby, four years old. They are very much in Kaye's life. Although they cannot visit together quite as often as they would like, due to the fact that Kaye cannot travel, they do come here to see him often. Kaye has a great relationship with both Ryan and Abby. His second daughter is Elana. She is thirty-six years old and married to Brendan for five years. They have two little boys: Drew, three years old, and Jake, two years old, and live just outside of Boston, Massachusetts. They are very much involved in Kaye's life, but distance makes it difficult to see each other frequently. They talk on the phone a lot, and when they are around the area, Kaye always gets to spend time with them. Both of his daughters and their families came to the area for Thanksgiving and came to his home for brunch, before visiting his ex-wife for dinner.

## ARGUMENT

Kaye understands that he has made a number of poor choices and accepts responsibility for these mistakes. He sees the mess he has made and is ashamed of his current life situation. He also understands the importance of therapy and how it can be used as a tool to change behavior and conduct.

It is important to note that Kaye has not committed a new offense. He has not hurt anyone. Again, Counsel would emphasize that in the years he has been on probation it has not been alleged that he has had any inappropriate contact with children, or viewed any inappropriate material related to children. Kaye has successfully used therapy to work through those issues.

He understands that even though he is an adult, certain behaviors and privileges are no longer afforded to him because of his prior misconduct. Regardless of his personal feelings or motivations, Kaye understands he should not have done what he did.

When an individual commits an offense, the criminal justice system serves a dual purpose. It is not intended to be solely punitive, but also reformatory. Therapy is specifically ordered with these types of charges because it is integral to the reformatory side. Therapy treats the underlying problem and prevents recidivism by teaching someone how to change their behavior. In seeking reform, therapy is much more important than incarceration. Therapy is the tool through which the underlying problem itself is addressed, which subsequently ensures that the wrong that was done never occurs again. This is true not only for criminal behavior, but for any behavior.

Kaye has successfully used therapy to work through his issues involving children. In these types of cases, addressing and treating an individual's proclivities towards minors is often the most challenging, but clearly the most important goal sought to be achieved. Since his conviction, there have been no instances or accusations regarding any sort of contact with children. Since beginning treatment, Kaye has addressed this most serious issue. This success shows Kaye's ability to effectively use therapy to modify his behavior.

Therapy sessions with Dr. Tedassi consisted of discussing issues relating to how Kaye could manage his daily problems and anxiety, and to review coping skills. It also focused on job

searching, selection of jobs with less stress, and complying with supervision. Therapy focused on avoiding risk situations, and focusing on conditions of Kaye's probation. They also talked about whatever issues arose in Kaye's life. For example, they talked about how difficult it was for Kaye to be separated from his children and how grateful he is to have a brother that is supportive. They also discussed relaxation techniques. In the context of staying focused and maintaining a stable mind, they spoke about managing stress and anxiety, setting goals, and looking forward to completing probation successfully. Kaye has progressed tremendously. He no longer needs medication, and he can successfully manage his stress and anxiety. He has found employment, and is being productive in society through the work force. He is feeling worthy, and that means a lot to him. Kaye feels accomplished and proud of himself. He was very cooperative, productive, and ready to learn new things during his sessions, with a strong desire to change for the better.

Not only has Kaye successfully completed his mental health treatment, but he has also successfully completed his sex offender treatment with Dr. Gates. Neither provider believes that he currently needs any further treatment, and have released him as a patient. His previous experience in therapy gave Kaye the insight necessary to successfully change his behavior, and there is no reason to believe that he will not be able to do so again. The purpose of this hearing is to address the need for strict compliance with the special conditions of Kaye's probation that prohibit him from opening lines of credit without prior approval and using the internet without prior approval. There are more effective and long-lasting methods to address this issue than incarceration.

In regard to the allegation of opening unauthorized lines of credit, Kaye does not dispute this. Kaye has had a difficult time adjusting to the lack of privacy in his personal life, and opened

these new lines of credit so that he could privately purchase items in pursuit of adult relationships and for other similar reasons. He feels a great level of intrusion with his probation officer being able to access everything that he purchases on his approved credit and debit cards. The new lines of credit that he opened were specifically used for pursuing adult relationships, purchasing things such as dinners and gifts on dates with other adults. Kaye understands that this was a violation of his conditions, and he regrets his actions deeply, accepting responsibility for them.

However, in regard to the allegation of failing to disclose the purchase of a Smart TV or Blue-Ray DVD player to his probation officer, there is adequate reasoning as to why Kaye should not be found guilty of this violation. Though Kaye does admit to owning both devices, he claims they were not internet accessible. In order to access the internet on either device, they must be equipped with a dongle. A dongle is a piece of hardware that is used to provide additional functionality when connected to a device. In this case, the additional functionality is accessing the internet. The dongle must be attached to the system in order for it to function. Therefore, Kaye's Smart TV could not function as a "smart" device without it. Kaye has never owned such a device, making it impossible for him to access the internet from his TV or Blue-Ray DVD player. His Netflix subscription was solely used on his authorized computer and through the use of Comcast, his cable provider. Specific to the Blue-Ray DVD player, Kaye was unaware that it was even internet capable, and thought it was a normal DVD player.

The violation states that Turro learned of the existence of the Smart TV when Kaye informed her that he used his Smart TV to watch Netflix. At that time, she told him that he had to get rid of it, which he promptly did. He then purchased a new TV, one without internet capability at all. On December 20, 2017, Turro conducted an unannounced home inspection to confirm that

he had removed the Smart TV. During this inspection, it was confirmed that he had removed it as instructed. However, this is when Turro located the Blue-Ray DVD player, and instructed Kaye to dispose of it, which he promptly did.

Kaye had this Smart TV for years, and Turro has been in his residence on countless occasions, never pointing out to him that he was not supposed to have it. Had he realized it was a violation of his conditions, he would have disposed of it immediately, as he did when she brought it to his attention. The Blue-Ray DVD player had also been at his residence for years, and present during all inspections by Turro. She had never informed him that it was a violation, or he would have disposed of it as well, as he did when she told him.

Kaye has also successfully completed a polygraph test. The test asked him questions about whether he has used any devices with internet capabilities other than the Smart TV or Blue-Ray DVD player. Kaye answered "no," and the result was truthful. He was asked if he had any unsupervised contact with minors since his last polygraph. He answered "no," and the result was truthful. He was asked if he has lied to his probation officer in situations other than the current violations. He answered "no," and the result was truthful. He was also asked if he had lied to his therapist to make him look better. He answered "no," and the result was truthful. Additionally, he was even asked if he believes that he is at risk for reoffending on the sexual offense. Kaye answered "no," and the result was truthful. This shows that Kaye has come a long way. He deserves a chance to show his probation officer, and himself, that he can be better.

Kaye has neither been charged with nor convicted of any new offenses. Kaye has neither hurt anyone, nor has he re-offended. Despite the setbacks listed in this violation, Kaye has also made significant progress on his path toward rehabilitation in what Counsel would argue to be

13

the most significant aspect, proclivities toward children. If given the opportunity, Kaye can and will use the tools he learns in therapy to conform his actions to the Court's orders.

Kaye has finally reached a point in his life where he is functioning normally again, and incarcerating him once more would only set him back in his progress. It is imperative that he be permitted to continue to work and function in society. A half-way house would be a perfect disposition for him, and would serve the punishment goal of the justice system by removing him from his home, but would also serve the rehabilitative goal by allowing him to keep his job and further his progress. Kaye would be subject to all restrictions of the halfway house, including requirements such as getting permission before leaving the house, and being home at a certain time. He will lose the privacy that living on his own allows, and will be subject to rules. At the same time, he will also be able to continue working and being the productive member of society that he knows he can be. For the reasons stated above, relocating Kaye to a half-way house is a just and appropriate sentence.

WHEREFORE, the Defendant DAVID KAYE, respectfully requests that this court impose a disposition of relocation to a half-way house in Montgomery County, Maryland.

Respectfully submitted,

DAVID KAYE
By Counsel

PATRICK N. ANDERSON & ASSOCIATES, PC

_____/s/_____
Jessica A. Richardson, Esquire
VA Bar # 90158
333 N. Fairfax Street, Suite 310
Alexandria, Virginia 22314
(703) 519-7100 phone

14

(703) 519-7104 facsimile
jrichardson@pnalaw.com

## CERTIFICATE OF SERVICE

I, Jessica A. Richardson, hereby certify that on the 21st day of February, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

William Clayman
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
william.g.clayman@usdoj.gov

_____/s/_____

Jessica A. Richardson, Esquire
VA Bar # 90158
333 N. Fairfax St., Suite 310
Alexandria, Virginia 22314
(703) 519-7100 phone
(703) 519-7104 facsimile
jrichardson@pnalaw.com

15

# ATTACHMENT A



Congregation
**Har Tzeon - Agudath Achim**

December 27, 2017

David Kaye
24 Court House Square, #307
Rockville, MD; 20850

To Whom It May Concern:

Please be advised that at this time David Kaye is welcome to attend our Synagogue – Congregation Har Tzeon-Agudath Achim on University Blvd. in Silver Spring, MD – for religious services on the Sabbath and on all major Jewish Holy Days.

Feel free to contact me if you have any further questions.

Sincerely,

*Dan Gorin*

Dan Gorin, President
Congregation Har Tzeon-Agudath Achim

DRG:el

---

# ATTACHMENT B

I would like to start by thanking you for this opportunity to allow me to write about my long-time friendship with David Kaye. My husband and I have known David in different capacities throughout the years and have interacted with him both personally and known him as the religious leader of our congregation..

I first met David at the University of Maryland in the early 70s where we were both students. David and his wife, Sari, were among our wedding guests. Living in different parts of the country, our friendship was re-kindled in 1985 when David and his family moved to the DC area to accept the Assistant Rabbi position at Congregation Har Shalom, where we were members.

The following sixteen years strengthened our relationship as we became close family friends, sharing meals together, working together on various synagogue committees, sharing family celebrations, and being privileged to have David officiate at our three children's religious life cycle ceremonies. Our daughter and David's youngest daughter became good friends, and our daughter often spent many weekend afternoons in the Kaye home. As our sons grew into young adults, David developed a warm, mentoring relationship with them as well; and would occasionally meet with our oldest son for a dinner and mentoring chat.

Needless to say, we were shocked and saddened when we learned of the charges against him shortly before the Nightline episode was broadcast. During the years of his incarceration, we visited him on several occasions, and have remained in contact as friends since his release from prison. We both wanted to be a support and to try to understand how the friend we cared about had so compromised himself. We felt that it was particularly critical at this time of his re-entry into society, to be there for him and we hoped to help minimize the isolation and stigma. We since have had many heart to heart conversations with David trying to understand his mindset and understand why he makes certain choices. Through the years, it appears that David has learned to take responsibility for his poor choices, and recognizes the pain he has causesd himself and others.

We have watched him painstakenly try to re-establish a normal life. He has conscientiously sought work (sadly in non-professional settings), and has proved himself in various work environments as a loyal, responsible employee. We have had him for meals in our home, and he has also on two occasions had us over for dinner as well. We see his delight when he has opportunities to participate in "family life" with his children, grandchildren and extended family. He has shared his disappointment with us that he hasn't been able to integrate his life into the larger community, but he increasingly seems to understand the reasons why.

We continue to be impressed by his resilience, his willingness to acknowledge his challenges, and his desire to live a safe and quiet existence.

In closing, we hope the Court will be sympathetically inclined and magistrate with justice and mercy. Again, thank you for this opportunity to share. –Marsha Teichman

# ATTACHMENT C

Dr. Paula Mintzies, L.C.S.W.
11602 Montague Court
Potomac, Maryland 20854
Telephone: 240-461-2555

February 16, 2018

Dear Honorable Hilton,

I am writing this letter on behalf of David Kaye, whom I have known for 20 years. I know David in two capacities – as my Rabbi and as my friend.

Throughout the years since David left prison, he has shown a persistence and determination to recreate his life. Currently he is working two jobs – both of which he found through his personal persistence. David has learned, painfully over these years, that he is not able to obtain jobs where he can use his level of education and training. However, that has not stopped him from finding employment. David is determined to create a meaningful and purposeful life and part of that purpose is fulfilled through work. Wherever he has been employed, he tried to bring the best that he could to each and every work situation.

His perseverance impresses me. It can become indeed discouraging to apply for jobs and receive a tentative offer pending his background check. And so many times, the offer was rescinded. Many would just give up and say, "I am not going to try anymore." That is not David. He keeps trying and won't give up. And that is an admirable quality.

David is a person who believes in G-d, who prays to G-d and who finds strength from G-d. During his time in prison, he never gave up with his belief. I would often tell David how I wish I were able to do the same. His religion continues to be an essential part of how he lives his life. Whenever he is permitted, he gladly attends a synagogue service. Though he is quite limited in where he might attend services that does not stop David from keeping his religious beliefs and practices strong in his life. His practices serve as a light for him – in good times and difficult ones.

David is a devoted friend and family member. His family and friends know that if support is needed, we can reach out to him. And we know that he will try his best to be there for us.
I am grateful to have David as my friend.

Sincerely,

Paula Mintzies

Paula Mintzies, D.S.W

# ATTACHMENT D

To Whom it May Concern:

I am writing this letter to provide a reference for David Kaye.

I have known Mr. Kaye for about twenty years.  We first met when I recruited him to co-lead spiritual support groups with me under the auspices of the Washington Jewish Healing Network.  We began working together in leading a spiritual autobiography group for mental health professionals.  Because of Mr. Kaye's leadership qualities and his empathy, the members of the group were extremely responsive to him.  And because of those qualities I invited him to co-lead several subsequent groups with me — mostly for bereaved people.  He provided wisdom and comfort to those who had lost a loved one.

In recent years, Mr. Kaye has been a frequent guest in my home.  My husband and I have enjoyed hosting him along with other friends for holiday dinners.  We and the other guests always find him to be a very compatible friend who brings a lot of intelligence, humor and compassion to our discussions.

Sincerely,

Carol P Hausman, Ph.D.
4000 Cathedral Avenue NW
Apt. 332B
Washington, DC 20016
202-494-1935