IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:06-CR-205 |
| v. ) | |
| ) | The Honorable Claude M. Hilton |
| DAVID A. KAYE, ) | |
| ) | Hearing: February 23, 2018 |
| Defendant. ) | |

**GOVERNMENT'S POSITION WITH RESPECT TO
DEFENDANT'S SUPERVISED RELEASE VIOLATIONS**

The United States of America, pursuant to 18 U.S.C. § 3583 and Rule 32.1 of the Federal Rules of Criminal Procedure, hereby submits this memorandum on the supervised release violations of defendant David A. Kaye (hereinafter "defendant"), as documented in the Petition on Supervised Release submitted by Senior U.S. Probation Officer Barry E. Raymond and filed October 16, 2017, and its corresponding addendum filed January 2, 2018. For the reasons set forth below, the Government respectfully recommends that the Court revoke the defendant's supervised release and impose a nine-month term of imprisonment.

**BACKGROUND**

**I.    Underlying Conviction and Prior Supervised Release Violations**

On May 18, 2006, a grand jury returned a two-count indictment charging the defendant with coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b) and travelling with the intent to engage in illicit sexual contact in violation of 18 U.S.C. § 2423(b). The conduct giving rise to these charges occurred the year prior, during which the defendant, then fifty-four years old, had sexually explicit online conversations with an individual he believed to be a thirteen-year-old boy living in Virginia. Based on those conversations, the defendant travelled from his

home in Maryland to Virginia to have sex with the purported child, only to discover upon his arrival that he had been the subject of a sting operation and that the purported child he had been communicating with was an adult. Following a bench trial, the Court found the defendant guilty of both counts and, on December 1, 2006, sentenced him to a combined term of seventy-eight months of imprisonment followed by a ten-year term of supervised release. In January 2012, the defendant was released from incarceration to the supervision of the U.S. Probation Office in the District of Maryland with special conditions prohibiting him from, among other things, possessing pornographic material and accessing the internet without prior approval from his probation officer.

Since its inception, the defendant's term of supervised release has been punctuated by multiple periods of incarceration following instances of non-compliance. In the first of four Petitions on Supervised Release, filed June 26, 2013, Senior U.S. Probation Officer Cynthia Suter described the defendant's adjustment to supervision as "poor" and identified two conditions that he violated. First, the defendant accessed the internet without prior approval from his probation officer to respond to advertisements for anonymous sexual encounters on Craigslist and to install software on his computer that disabled the Probation Office's computer monitoring software. Second, the defendant viewed pornographic images in Craigslist personal advertisements in March and April 2013. At a September 27, 2013 hearing, the Court found the defendant in violation of his conditions of release, revoked his supervision, and imposed a new ten-year term of supervised release with the additional conditions that he be incarcerated for five days intermittently and be barred from having any access to internet-capable devices without prior approval from his probation officer.

On April 8, 2015, Officer Suter submitted a second Petition on Supervised Release, again alleging that the defendant had violated the conditions of his release that bar him from accessing

the internet without prior approval and from possessing pornography. Specifically, during a meeting in his sex offender treatment provider's office, U.S. Probation Officer Jessica Turro discovered that the defendant had purchased without permission an iPhone capable of accessing the internet—a purchase he initially tried to hide from her by refusing to check his phone in front of her when it rang. Later, while monitoring the defendant's computer use on April 3, 2015, Officer Turro discovered that he was using other unapproved devices—a Samsung Galaxy smartphone that he appears to have purchased in 2014 and a Verizon Ellipsis Tablet—to access the internet. Officer Turro went to the defendant's home the next day, where she recovered the two devices. The defendant denied having any other unauthorized devices, but an inspection of his home revealed that he had a Nook E-reading device, two pornographic DVDs, empty boxes for three smartphones (two of which were not recovered), and an unauthorized USB storage device. During this visit, the defendant admitted to Officer Turro that he used the smartphones to have sexually explicit conversations with unknown individuals. The Court found the defendant in violation of his supervised release and, on May 14, 2015, ordered that he continue on supervised release and serve a three-month term of incarceration. The Court also ordered that he return to sex offender treatment therapy.

Officer Suter filed another Petition on Supervised Release on July 16, 2015, alleging for a third time that the defendant had improperly accessed the internet without prior approval. According to the petition, shortly after his release from his most recent term of incarceration, the defendant informed Officer Turro that he had accessed the internet to check his email and search for employment. Officer Turro's review of his computer's internet history revealed that the defendant had also used the internet to access Craigslist, websites for Sexual Compulsives Anonymous and cell phone plan carriers, and "Zorpia," a social media website used to build

personal and business relationships. The defendant admitted to this violation while appearing before the Court on September 17, 2015 and did not oppose the United States' request that the Court impose a six-month term of incarceration followed by a return to therapy. The Court granted the request and, in addition to the term of incarceration, continued the defendant's ten-year term of supervised release with three new conditions: (1) that he provide his probation officer with access to any requested financial information; (2) that he not open additional lines of credit or enter into contracts, including contracts for cellular telephone or internet data plans, without prior approval; and (3) that he participate in any mental health treatment program deemed necessary by his probation officer.

The Probation Office later determined that the defendant had opened a line of credit to purchase a vehicle without prior approval. On April 15, 2016, the defendant waived his right to a hearing on this violation and agreed to a modification of his term of supervision requiring that he reside in a Residential Re-entry Center for a period of sixty days. He completed his sixty-day stay on July 11, 2016.

## II.     Current Alleged Violations

Currently before the Court is a Petition on Supervised Release submitted by Senior U.S. Probation Officer Barry E. Raymond and filed October 16, 2017, and its addendum filed January 2, 2018. In this petition, Officer Raymond alleges that Officer Turro discovered five new unauthorized lines of credit on the defendant's September 29, 2017 credit report. The accounts were identified on his report as: #2-Montgomery County Em-Revolving Credit card ("#2"), opened on April 5, 2017; #3-Montgomery County Em-Credit Card ("#3"), opened on April 5, 2017; #4-SYNCB/Amazon PLCC-Revolving Charge Account ("#4"), opened on April 8, 2017; #16-Chase Card-Revolving Flexible Spending Credit Card ("#16"), opened on April 8, 2017; and #17-

Barclays Bank Delaware-Revolving Credit Card ("#17"), opened on April 10, 2017. The defendant admitted to Officer Turro that he opened accounts #2 and #3. He claimed to not recall opening account #4 while acknowledging that it was possible he did so, and denied opening accounts #16 and #17. Those latter two accounts, he claimed, were old accounts that had been continued.

In the addendum, Officer Raymond alleges that Officer Turro discovered a charge from May 15, 2017 on the defendant's Montgomery County ECFU account for a subscription to Netflix, which provides on-demand streaming video programming over the internet. The defendant disclosed to Officer Turro on October 26, 2017 that he subscribed to Netflix and streamed it at home on an unauthorized Smart TV with integrated internet capabilities. After Officer Turro instructed him to remove the Smart TV from his home, the defendant claimed that he gave the device to his brother and replaced it with a television incapable of accessing the internet. During an unannounced home inspection on December 20, 2017, Officer Turro confirmed that the defendant's television could not access the internet but observed that his Blu-ray DVD player—another device that he had purchased without seeking prior approval—had internet capabilities. Officer Turro instructed the defendant to immediately dispose of the device.

## ANALYSIS

### I. Legal Standard

A court may revoke a term of supervised release upon a finding by a preponderance of the evidence that a defendant has violated a condition of the release, and impose a term of imprisonment equal to all or part of the supervised release term authorized by statute, without credit for time previously served. 18 U.S.C. § 3583(e)(3). Upon revocation, a court may impose another period of supervised release, the length of which shall not exceed the term of supervised

release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. *Id.* at § 3583(h). If a court does not revoke supervised release, the court may continue, modify, or terminate a term of supervised release. *Id.* at § 3583(e)(1)-(2).

The Fourth Circuit has observed that a "revocation hearing is an informal proceeding and rules of evidence need not be strictly observed." *United States v. Cates*, 402 F.2d 473, 474 (4th Cir. 1968); *see also Morrissey v. Brewer,* 408 U.S. 471, 484 (1972). Before revoking or modifying a term of supervised release, courts are to consider the history and characteristics of the defendant, the nature and circumstances of the offense, and all other Section 3553(a) sentencing factors, with the exception of the seriousness of the offense factor set forth at Section 3553(a)(2)(A). *See* 18 U.S.C. § 3583(e). Such factors include the need for the sentence to provide adequate deterrence to the defendant, to protect the public from the defendant, and to provide the defendant with correctional treatment, among other factors. *See* 18 U.S.C. § 3553(a)(2)(B)-(D) and (a)(4)-(7).

## II. Statutory and Guidelines Analysis

The defendant's underlying offenses—coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b) and travelling with the intent to engage in illicit sexual contact in violation of 18 U.S.C. § 2423(b)—were, at the time of his conviction, Class B felonies.[1] 18 U.S.C. § 3559(a)(2). Accordingly, if the defendant's term of supervised release is revoked, the Court may impose a maximum term of imprisonment of three years. 18 U.S.C. § 3583(e) (explaining that upon revocation a defendant may be required to serve a term of imprisonment equal to "all or part of the term of supervised release authorized by statute . . . *except that* a defendant whose term [of

---

[1] Section 2422(b) has since been amended to provide a maximum penalty—and, in some instances, a mandatory penalty—of life imprisonment, making it a Class A felony.

6

supervised release] is revoked under this paragraph may not be required to serve on any such revocation more than . . . 3 years in prison if [the] offense [that resulted in the term of supervised release] is a class B felony") (emphasis added); *cf. id*. at § 3583(b)(1) ("[e]*xcept as otherwise provided*, the authorized terms of supervised release are . . . for a Class A or Class B felony, not more than five years") (emphasis added). Upon revocation, the Court may impose an additional term of supervised release after imprisonment, the length of which "shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." *Id.* at § 3583(h).

The U.S. Sentencing Guidelines provide non-binding policy statements for supervised release violations. *See* U.S.S.G. § 7 Part A. Under the Guidelines, the defendant's alleged violations of the conditions of his release—including (1) his failure to seek prior approval from his probation officer before opening five new lines of credit and (2) his failure to seek prior approval from his probation officer before purchasing multiple devices capable of accessing the internet—are Grade C violations. *See* U.S.S.G. § 7B1.1(a)(3). At the time of sentencing for the underlying offense, Defendant had a Criminal History Category of I. When a defendant with a Criminal History Category of I commits a Grade C violation, the Guidelines suggest a term of imprisonment between three and nine months. *See id.* at § 7B1.4(a).

## **RECOMMENDATION**

The United States respectfully recommends that this Court find the defendant in violation of the conditions of his supervised release and impose a nine-month term of incarceration. This recommendation, which tracks the progression of the Court's previous sanctions, properly reflects the seriousness of the defendant's conduct and his history of violations. Of particular concern, the

defendant's most recent violations, like all of his violations preceding them, involve efforts on his part to have access to the internet without having to seek prior approval from his probation officer as required by the conditions of his release. Given the nature of the defendant's underlying offenses, the Court has determined that the defendant having unfettered access to the internet presents a serious threat to the safety of the community and thus imposed a special condition of release under 18 U.S.C. § 3583(d) that curtails his ability to do just that. The defendant's conduct—and, troublingly, the fact that he failed to disclose that he purchased multiple devices capable of accessing the internet until he was caught by his probation officer—indicates that his previous terms of imprisonment were not sufficient to deter his deceptive behavior and his desire to engage in conduct that violates the terms of his release set by this Court.

Likewise, the defendant's failure to disclose to his probation officer that he opened multiple lines of credit presents an escalation in his pattern of behavior and concealment. The Court restricted the defendant's ability to open additional lines of credit or enter into contracts without the approval of his probation officer based on the United States' unopposed recommendation that, absent such a restriction, he was likely to make purchases that increased his risk of reoffending or engaging in other behavior likely to lead to additional violations or offenses. The defendant has now taken steps to violate this Court-imposed special condition and has apparently used a new line of credit to purchase internet-based services—in this instance, Netflix—all without notifying his probation officer. And while this conduct differs from the conduct that gave rise to the three previous Petitions on Supervised Release, the defendant cannot claim that he had not received proper notice that opening lines of credit and making clandestine purchases through those lines of credit violates the conditions of his release: in April 2016, the defendant waived his right to a violation hearing and agreed to stay in a halfway house for sixty days after his probation officer

discovered that he had opened a line of credit without prior approval. Inexplicably, following his stay in the halfway house, he opened five additional lines of credit without seeking authorization from his probation officer.

Accordingly, the United States respectfully recommends that a nine-month term of incarceration followed by a continued ten-year term of supervised release under the same standard and special conditions is necessary here to impress upon the defendant the importance of his compliance with the conditions of his release, both for himself and the community.

Respectfully submitted,

Tracy Doherty-McCormick
Acting United States Attorney

By:   /s/ William G. Clayman
William G. Clayman
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3744
Fax: (703) 299-3980
Email: william.g.clayman@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2018, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic copy to the following:

Patrick Nicholas Anderson
Patrick N. Anderson Law Office
333 N. Fairfax Street
Suite 310
Alexandria, VA 22314
(703) 519-7100
Email: panderson@pnalaw.com

In addition, I hereby certify that on February 21, 2018, I emailed a copy of the foregoing to the U.S. Probation Officer assigned to this matter:

Barry E. Raymond
Senior U.S. Probation Officer
Manassas, VA
(703) 366-2133
Email: barry_raymond@vaep.uscourts.gov

        Respectfully submitted,

        Tracy Doherty-McCormick
        Acting United States Attorney

By:   /s/ William G. Clayman
        William G. Clayman
        Special Assistant United States Attorney
        United States Attorney's Office
        Eastern District of Virginia
        2100 Jamieson Avenue
        Alexandria, VA 22314
        Phone: (703) 299-3744
        Fax: (703) 299-3980
        Email: william.g.clayman@usdoj.gov